UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| AMALGAMATED TRANSIT | ) |
| UNION DIVISION 788, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 4:15-CV-00455-AGF |
| | ) |
| BI-STATE DEVELOPMENT AGENCY | ) |
| OF MISSOURI-ILLINOIS | ) |
| METROPOLITAN DISTRICT, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' motion (Doc. No. 4) to remand this case to the state court from which it was removed. For the reasons set forth below, the motion to remand shall be granted.

## BACKGROUND

Plaintiffs, a labor union and its officers, filed this action against Defendant Bi-State Development Agency of Missouri/Illinois Metropolitan District d/b/a/ Metro ("Metro") on January 16, 2015 in the Circuit Court of the City of St. Louis, Missouri. Plaintiffs assert claims for breach of contract and specific performance relating to a collective bargaining agreement between the parties.

Metro removed the action to this Court on March 12, 2015. Metro asserts that Plaintiffs' claims must be governed by federal common law, and that the Court therefore has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

Metro was created in 1949 by an interstate compact between Missouri and Illinois, which was approved by the United States Congress pursuant to the Compact Clause of the United States Constitution. *See* Mo. Rev. Stat. § 70.370; 45 Ill. Comp. Stat. 100/1. Metro's purpose is "to provide a unified mass transportation system" for the bi-state region. *Bartlett v. Bi-State Dev. Agency*, 827 S.W.2d 267, 269 (Mo. Ct. App. 1992). "Entities created by interstate compacts have a unique legal status. Bi-state entities 'are creations of three discrete sovereigns: two States and the federal Government.'" *KMOV TV, Inc. v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 625 F. Supp. 2d 808, 811 (E.D. Mo. 2008) (quoting *Hess v. Port Auth. of Trans-Hudson Corp.*, 513 U.S. 30, 40 (1994)). The parties agree that neither the Missouri Public Sector Labor Law nor the Illinois Public Labor Relations Act applies to Metro.

According to the petition, Plaintiffs and Metro are parties to a collective bargaining agreement, effective July 1, 2009 through December 31, 2017, covering the employment terms and conditions of certain Metro employees. The collective bargaining agreement contains a grievance procedure to settle disputes between the parties, and provides for binding arbitration if the parties are unable to resolve a grievance. Plaintiffs' petition seeks to enforce the grievance and arbitration procedures in the collective bargaining agreement and to recover damages resulting from Metro's alleged breach of the agreement.

Although the face of Plaintiffs' petition does not contain any federal question, Metro argues that federal law completely preempts the state law claims pleaded by Plaintiffs. Specifically, Metro argues that federal common law, not state law, must

2

govern the enforcement of the parties' collective bargaining agreement because Metro, as a bi-state entity, is a creature of federal law. Moreover, Metro contends that federal common law must govern because it is not clear that either Missouri or Illinois law would apply to Plaintiffs' claims. Metro argues that the Missouri and Illinois public sector labor statutes do not apply to it, and that, because collective bargaining agreements are not ordinary commercial contracts, state contract law cannot apply either. In the absence of an applicable state law, Metro argues, the Court must look to the federal policy favoring collective bargaining and hold that Plaintiffs' claims arise under federal common law.

Plaintiffs argue that Defendants have not cited any authority for their novel argument that federal common law governs this matter. Plaintiffs contend that Metro's status as an entity created by an interstate compact does not establish federal question jurisdiction because Plaintiffs' claims do not require interpretation of the compact. Plaintiffs argue that state contract law governs their claims, and that Metro has not established that federal law preempts state law in this case. Plaintiffs note that although the Labor-Management Relations Act ("LMRA") creates federal jurisdiction over lawsuits involving violations of contracts between employers and labor organizations, the statute explicitly excludes from coverage any "political subdivision" of a state. *See* 29 U.S.C. § 152(2). Plaintiffs assert that entities created by interstate compacts are considered political subdivisions excluded from coverage under the LMRA, and that Metro has failed to establish that any other federal law preempts their state law claims. Therefore, Plaintiffs assert that this action must be remanded to the state court.

Finally, as part of their motion to remand, Plaintiffs have requested an award of the attorneys' fees and expenses that they have incurred as a result of the removal.

## **DISCUSSION**

A civil action brought in state court may be removed to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). However, "the party seeking removal has the burden to establish federal subject matter jurisdiction," and "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009) (citations omitted).

District courts have original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," which is also known as federal-question jurisdiction. 28 U.S.C. § 1331. "The general rule—known as the 'well-pleaded complaint rule'—is that a complaint must state on its face a federal cause of action in order for the action to be removable on the basis of federal-question jurisdiction." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, No. 13-3170, 2015 WL 2113782, at *4 (8th Cir. May 7, 2015). "Under an exception or corollary to the well-pleaded complaint rule, however, a state-law claim may be removed to federal court when a federal statute wholly displaces the state-law cause of action, resulting in complete preemption." *Id.* But complete preemption is "rare," and "without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against complete preemption." *Id.* at *5. Likewise, there is an exception to the well-pleaded complaint rule for state-law claims which "necessarily raise a stated federal issue, actually disputed

4

and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Cent. Iowa Power Co-op.*, 561 F.3d at 912. However, to remove on this basis, the removing party must demonstrate that the plaintiff's "right to relief necessarily depends on the resolution of a disputed and substantial question of federal law." *Id.*

Metro does not assert that federal law creates the cause of action in this case. Although the LMRA creates federal jurisdiction for labor disputes of this nature, Metro does not dispute Plaintiffs' assertion that Metro is a political subdivision excluded from coverage under the LMRA, 29 U.S.C. § 152(2). There is also some support for that assertion in the caselaw. *See Joseph v. Bi-State Dev. Agency*, No. 4:05cv2390 SNL, 2006 WL 744314, at *1 (E.D. Mo. Mar. 21, 2006) ("[T]he Court is inclined to agree with the defense, and find Bi-State to be a political subdivision that cannot be sued for punitive damages under Title VII."); *Division 1287, Amalgamated Transit Union, AFL-CIO v. Kansas City Area Transp. Auth.*, 485 F. Supp. 856, 859 (W.D. Mo. 1980) (finding that bi-state Kansas City Area Transportation Authority is a "political subdivision" and therefore not an employer within the meaning of the LMRA); *Int'l Union of Operating Engineers, Local 542 v. Delaware River & Bay Auth.*, No. CIV. 13-3204 RBK/JS, 2014 WL 1882430, at *3 (D.N.J. May 12, 2014) ("[B]i-state agencies such as the [Delaware River Bay Authority] are not 'employers' within the meaning of the LMRA, because they are 'political subdivisions.'").

However, Metro asserts that Plaintiffs' claims arise under federal law because Metro is a creature of federal law. Metro correctly asserts that federal courts have

5

jurisdiction over state law claims against a bi-state entity when those claims require interpretation of the interstate compact that created the entity. *See Cuyler v. Adams*, 449 U.S. 433, 438 (1981) ("[T]he construction of an interstate agreement sanctioned by Congress under the Compact Clause presents a federal question."). The issue, then, is whether construction of the compact that created Metro is necessary to resolve Plaintiffs' breach of contract and specific performance claims. Metro has not explained why construction of the compact is necessary to resolve Plaintiffs' claims, and a review of Plaintiffs' petition suggests that it is not necessary. The petition does not even mention the compact or its terms, and instead focuses solely on the terms of the collective bargaining agreement between the parties. Because Metro has not demonstrated that resolution of Plaintiffs' state law claims requires construction of the interstate compact, the Court cannot premise its jurisdiction on the existence of that compact. *See Collier v. Bi-State Dev. Agency of Missouri-Illinois Metro. Dist.*, No. 4:14-CV-1263-JCH, 2014 WL 5343357, at *3 (E.D. Mo. Oct. 20, 2014) (remanding breach of pension plan claims against Metro upon finding that Metro failed to demonstrate that resolution of the claims would necessarily require interpretation of the interstate compact).

Metro also asserts that Plaintiffs' claims arise under federal law because federal common law governs enforcement of the parties' collective bargaining agreement. But Metro has not cited, and the Court has not found, any authority holding that a collective bargaining agreement between a bi-state agency and a labor union is governed by federal common law. Indeed, at least one district court has rejected this argument. *See Int'l Union of Operating Engineers, Local 542*, 2014 WL 1882430, at *5-6 (dismissing a

6

lawsuit involving a collective bargaining agreement between a labor union and a bi-state agency for lack of subject matter jurisdiction because the dispute related primarily to "the scope of the arbitration clause in the parties' [collective bargaining agreement], which is not a creature of federal law merely because it was entered into by a bi-state agency," the dispute did not require construction of the interstate compact, and the defendant did not offer any authority on which to "ground subject-matter jurisdiction upon . . . unspecified federal common law").

Metro argues that federal common law must apply because, in light of Metro's bi-state status, it is not clear whether Missouri or Illinois law, or neither, would govern Plaintiffs' claims. But even if Plaintiffs' claims present a choice-of-law question, Metro has offered no authority suggesting that the answer to this question is to apply federal common law. The only support Metro offers the proposition that federal common law governs is its assertion that there is a federal policy favoring collective bargaining. Metro points to Section 13(c) of the Urban Mass Transportation Act ("Section 13(c)"), 49 U.S.C. § 5333(b), and the Norris-LaGuardia Act, 29 U.S.C. § 101, et seq., as evidence of this policy. However, Metro admits that these statutes neither create a federal cause of action nor indicate a congressional intent to preempt state law in this case. Indeed, the U.S. Supreme Court made clear in *Jackson Transit Authority v. Local Division 1285, Amalgamated Transit Union, AFL-CIO-CLC*, that "Congress designed [Section] 13(c) as a means to accommodate state law to collective bargaining, not as a means to substitute a federal law of collective bargaining for state labor law," and that, contrary to Metro's assertion, Congress intended collective bargaining agreements between public transit

7

authorities and unions "to be governed by state law and applied in state courts." 457 U.S. 15, 28-29 (1982). Likewise, Metro has pointed to nothing in the Norris-LaGuardia Act that supports the application of federal common law to Plaintiffs' claims.

In short, Metro has not satisfied its burden to demonstrate that the state law claims pleaded in Plaintiffs' petition fall within any of the narrow categories of cases in which federal jurisdiction may be implied. *See Jackson Transit Auth*, 457 U.S. at 30 (Powell, J., concurring) ("Because a federal court should exercise extreme caution before assuming jurisdiction not clearly conferred by Congress, we should not condone the implication of federal jurisdiction over contract claims in the absence of an unambiguous expression of congressional intent."). Therefore, the Court will grant Plaintiffs' motion to remand.

Plaintiffs' request for attorneys' fees and other expenses, however, will be denied. Although 28 U.S.C. § 1447(c) provides that a remand order may require payment of fees incurred as a result of the removal, an award of fees is generally not warranted unless the removing party "lacked an objectively reasonable basis for seeking removal." *Convent Corp. v. City of North Little Rock*, 784 F.3d 479, 483 (8th Cir. 2015). The Court does not find that Metro's removal in this case was objectively unreasonable and will therefore deny Plaintiffs' request for attorneys' fees.

## **CONCLUSION**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' motion to remand is **GRANTED**. (Doc. No. 4.)

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Circuit Court of the City of St. Louis, Missouri, in which it was filed.

**IT IS FURTHER ORDERED** that Plaintiffs' request for attorneys' fees is **DENIED**.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 10th day of June, 2015.